UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LEONARD EUGENE WEATHER,

                                  Plaintiff,

v.                                                       6:19-CV-400 (GTS/ATB)

NEW YORK STATE POLICE, et al.,

                                  Defendants.

---

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

### I. Procedural History

This action was transferred from the Western District of New York on April 3, 2019 and subsequently sent to me for initial review.[1] (Dkt. No. 1). Plaintiff's original complaint named the following defendants: Robert Palmieri, Jr., the Mayor of Utica, New York; Anthony J. Picente, Jr., Oneida County Executive; and St. Elizabeth's Medical Center. (Complaint ("Compl.")) (Dkt. No. 1).

After reviewing plaintiff's complaint, I issued an Order and Report-Recommendation ("ORR") on April 16, 2019. (Dkt. No. 8). In the ORR, I concluded the following:

> In this case, as the complaint is written, there are absolutely

---

[1] Plaintiff originally filed this action in the Western District of New York on October 24, 2018, and it was administratively closed due to plaintiff's failure to properly complete his IFP application. (Dkt. No. 2, 3). The Case was reopened on December 10, 2018 based on plaintiff's newly filed IFP application. (Dkt. No. 5). However, the case was not transferred to the Northern District of New York until April 3, 2019. (Dkt. No. 6).

> no allegations that would justify claims against the Mayor Palmieri or Oneida County Executive Picente. However, the court will recommend dismissal without prejudice to plaintiff filing an amended complaint against ***individuals*** who may have been responsible for his alleged unconstitutional treatment during his arrest, or any alleged denial of medical care prior to taking plaintiff to the hospital. Although the court has serious doubts as to whether the plaintiff could amend to state a claim against St. Elizabeth's Hospital, the court will also recommend dismissing without prejudice as against the Hospital.

(Dkt. No. 8 at 10) (emphasis added). Plaintiff filed objections to the ORR. (Dkt. No. 9). Plaintiff did not object to the dismissal of defendants Palmieri and Picente, but objected to dismissal as against the "Oneida County Sheriffs, State of New York, the Utica County [sic] Police and other law enforcement,"[2] and stated that he would be filing an amended complaint. (Dkt. No. 9). Plaintiff also objected to the dismissal of "St Elizabeth's Hospital and its employee," because plaintiff claimed that he was "subjected to cruel and unusual punishment."[3] (Dkt. No. 9 at ¶ 5).

Prior to Chief District Judge Suddaby's review of my ORR, on May 23, 2019, plaintiff also filed what he labeled as his "Amended Complaint." ("FAC") (Dkt. No. 12). In this FAC, plaintiff named as defendants the New York State Police; the Utica Police Department; Oneida County Sheriffs; Jane Doe, John Doe, and Supervisor. (*Id.*)

---

[2] Plaintiff did not name these entities in the original complaint. (Dkt. No. 1).

[3] The court notes that because plaintiff appears to have been a pretrial detainee, and was not convicted at the time of the incident, the Eighth Amendment would not apply to him. Assuming the defendant acted under color of state law, constitutional medical care claims by pretrial detainees must be analyzed under the Due Process Clause of the Fourteenth Amendment because the Eighth Amendment's cruel and unusual "punishment" clause is not directly applicable to prisoners who have not been convicted. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Defendant Jane Doe was "legally responsible for the deliberate indifference to plaintiff's medical needs." (FAC ¶ 6). It is unclear whether Jane Doe was an employee at St. Elizabeth's Hospital or at the jail. Another defendant "Jane/John Doe" was listed as the "Supervisor at St. Elizabeth's Hospital," and "legally responsible for the operation of St. Elizabeth's Hospital." (FAC ¶¶ 6-7).

On June 19, 2019, Chief Judge Suddaby issued an order accepting and adopting my ORR, dismissing plaintiff's complaint without prejudice to his filing an amended complaint within forty-five (45) days of the date of his order. (Dkt. No. 13). However, Judge Suddaby also noted that plaintiff had already filed the FAC, and directed plaintiff to either "notify the Court in that he would like his currently pending Amended Complaint (Dkt. No. 12) to remain his new operative pleading in this action or (2) file a Second Amended Complaint . . . ." (Dkt. No. 13 at 4).

On August 2, 2019, plaintiff filed his Second Amended Complaint ("SAC"), and on August 5, 2019, plaintiff filed his Corrected Second Amended Complaint ("SAC2"). (Dkt. Nos. 14, 15). The SAC2 contained a page that was missing from the SAC, but otherwise is identical to the SAC. The court assumes that, in response to Chief Judge Suddaby's order, plaintiff decided to submit the SAC2 for the court's review as the operative pleading, and accordingly, I will review SAC2.

## II.  Sufficiency of SAC2

### A.  Facts

In SAC2, plaintiff names only the New York State Police; the Utica Police Department; and the Oneida County Sheriffs as defendants. Plaintiff has eliminated

any John or Jane Does and St. Elizabeth's Hospital. The body of the complaint still mentions that he was "refused proper care for his medical needs, and his request to see the surgeon who had performed the surgery on his foot the day before was denied." (SAC2 "Third Claim" at p.4).

Plaintiff claims that on October 20, 2016, between 3:00 a.m. and 5:30 a.m., a "group" of law enforcement officials from the Utica Police Department, Oneida County Sheriff's Department, and New York State Police, without probable cause or warrant forcefully removed plaintiff from his house at gun point and made him stand outside in the freezing cold weather while being searched.[4] (SAC2 at 3). The officers also searched plaintiff's apartment. Plaintiff states that he was never "shown" a warrant.[5]

Plaintiff states that he was taken to the Utica Police Station "under the false pretense that he was being detained because he was involved in illegal drug activities," but states that he was never charged with an offense as a result of the warrantless search and detention." (*Id.*) Plaintiff claims that he was subjected to a full strip search, never fingerprinted or photographed, and wrongfully detained and questioned for 3½ hours. Plaintiff claims that he was questioned about an old murder, with which he was not familiar. Plaintiff claims that he was told that ADA Lisi would "make the present charge go away," if plaintiff "just picked anyone," because the murder was "political"

---

[4] In his original complaint, plaintiff claimed that the officers who conducted the search included members of the New York State Police, the New Hartford Police, the Utica Police, the Oneida County Sheriff's Department, ATF and FBI agents, and members of the Oneida County District Attorney's Office, acting on behalf of ADA Lisi. (Compl. at 4).

[5] In the original complaint, plaintiff stated that he was not "shown or seen a warrant ***until 1/17 after attorney David Goldbas became involved in this matter***." (*Id.*) It thus appears that a warrant did exist.

and "it" would advance the detective and ADA Lisi's careers if they could close the case. (SAC2 at 3-4).

Finally, plaintiff states that he had foot surgery the day before the search, and he was told by his surgeon to stay off his feet and keep the foot elevated. (SAC2 at 4). Plaintiff claims that when the officers "raided" his house on October 20, 2016, they made plaintiff stand out in the "freezing" cold, which caused plaintiff great pain in his foot. Plaintiff complained about the pain, but was not taken to the hospital until "after the raid was completed." (*Id.*) As stated above, plaintiff still alleges that he was refused "proper" care for his foot at St. Elizabeth's hospital, in part, because his request to see the surgeon who performed the surgery was "denied."[6] Plaintiff was returned to the police station, where he was "strip[] searched and released." (*Id.*)

Plaintiff raises three "claims" in the SAC2:

(1)  Unreasonable search and seizure in connection with the search of his apartment by the Utica Police Detectives.

(2)  False arrest, false imprisonment, and negligence in connection with his detention and interrogation at the Utica Police Department.

(3)  Denial of proper medical care because he was made to stand in the cold as his apartment was being searched, notwithstanding his foot injury, and denial of proper medical care at the hospital.[7]

---

[6] Plaintiff claims that the raid occurred between 3:00 and 5:30 *a.m*. It is unlikely that the surgeon who operated on plaintiff's foot was at the hospital when plaintiff demanded to see the doctor.

[7] Plaintiff states in the SAC2 that his medical care claim is based on the Equal Protection Clause and asserts that he was subject to "cruel and unusual punishment." As stated above, the constitutional provision that would protect plaintiff is the Due Process Clause. There is no basis for an Equal Protection claim. In any event Chief Judge Suddaby dismissed plaintiff's claims against the hospital for lack of state action, and plaintiff has not cured that defect. Thus, plaintiff's claims against the hospital remain dismissed, and he has not named the Hospital or any employees thereof in the

5

(SAC2 at 3-4).

### B. Utica Police Department and Oneida County Sheriffs

#### 1. Legal Standards

Under New York law, departments, like the Utica Police Department, and the Oneida County Sheriff's Department that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality, and may not sue or be sued. *Hayes v. County of Sullivan*, Nos. 07-CV-667; 09-CV-2071, 2012 WL 1129373, at *24 (S.D.N.Y. March 30, 2012) (citing inter alia *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).

### B. Application

Plaintiff may not sue the Utica Police Department or the Oneida County Sheriffs without naming an individual who was responsible for the alleged constitutional violations. As I discussed in my ORR, plaintiff could conceivably name the municipalities themselves as defendants, either the City of Utica for the Utica Police Department or Oneida County for the Oneida County Sheriffs. However, as I discussed, the municipality itself may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of

---

caption of the SAC2.

constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

In the SAC2, plaintiff has not even remotely alleged a custom or policy of either department which would be sufficient, even at this early stage of the proceedings, to name either the City of Utica or Oneida County. Plaintiff is alleging only that he was subjected to an unreasonable search and seizure. In fact, the SAC2 seems only to allege this claim against the Utica Police officers. There is no indication that he can state a claim for municipal liability based on the facts that he has described in the SAC2. Thus, the SAC2 does not cure the defects that existed in the original complaint and in fact, gives less factual background than the original. Plaintiff has even eliminated some of the law enforcement groups that he originally claimed were involved in the search and seizure.

**C.     Eleventh Amendment/New York State Police**

**1.     Legal Standards**

The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state).

7

### B. Application

Plaintiff did not name the New York State Police as a defendant in his original complaint. However, the New York State Police Department is an arm of the state and may not be sued as an entity as plaintiff is now attempting to do. In my ORR, I specifically stated that plaintiff must name individuals who act under color of state law to violate his constitutional rights. Plaintiff has not done so in his SAC2. He has named only the agency as a defendant. The court notes that, unlike the ability in certain limited circumstances, to substitute a municipality as a defendant, because of the Eleventh Amendment, plaintiff may not replace the New York State Police with the State of New York as a defendant in a section 1983 claim for damages. Thus, plaintiff's claim against the New York State Police as an entity may not proceed.

### D. Search and Seizure/False Arrest[8]

#### 1. Legal Standards

##### a. Search and Seizure

"The Fourth Amendment protects individuals in their homes against 'unreasonable searches and seizures.'" *Lautman v. Village of Saugerties, N.Y.*, No. 1:13-CV-264, 2014 WL 1653189, at *5 (N.D.N.Y. Apr. 23, 2014) (quoting U.S. Const.

---

[8] Although plaintiff is currently incarcerated, it does not appear from the complaint that his claims of false arrest or unreasonable search and seizure are related to his current conviction because he claims that after he was detained and questioned, he was released. In any event, civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87. Although this court makes no specific finding because there are insufficient facts to do so, it does not appear from the SAC2 that *Heck* would bar any claims that plaintiff is attempting to assert in this case.

amend. IV). Warrantless searches are "'per se unreasonable . . . subject to only a few specifically established and well-delineated exceptions.'" *Id.* (quoting *United States v. Elliot*, 50 F.3d 180, 185 (2d Cir. 1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The Second Circuit has held that although a warrantless search is per se unreasonable, the operation of the presumption cannot shift the burden in a civil action to the defendant to prove that the official action was reasonable. *Id.* (quoting *Ruggiero v. Krzeminski*, 938 F.2d 558, 563 (2d Cir. 1991) (citations omitted)). The presumption merely places the burden on defendants to produce evidence of consent or other exception to the warrant requirement, while the ultimate risk of non-persuation remains with the plaintiff in accordance with the "established principles governing civil trials." *Id.*

### b. False Arrest/False Imprisonment

In order to state a claim for false arrest under the federal constitution, plaintiff must show that he was arrested without probable cause. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir.1996) (citing *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975)). Probable cause exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). In assessing the existence of probable cause, the court must consider the facts available to the officer at the time of the arrest and immediately before it. *Lowth*, 82 F.3d at 569. The existence of probable cause is a complete defense to an action for

false arrest. *Weyant*, 101 F.3d at 852 (citation omitted).

"[T]he elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State*, 37 N.Y. 2d 451, 456 (1975)).

**B.     Application**

As I stated in my ORR, personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability.[9] *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In the SAC2, plaintiff has still failed to identify any particular officer or officers who were responsible for the allegedly warrantless search, the false arrest, and even the alleged delay in taking plaintiff to the hospital. As stated above, he has attempted to sue the law enforcement "departments," which he cannot do. Although plaintiff claims that he was never "shown" a warrant, he also stated in his original complaint that he was never "shown" a warrant until "1/17," when an attorney became involved in the case. (Compl. at 4). This statement implies that there was a warrant which would defeat plaintiff's claim of a warrantless search.[10] The issue of false arrest would not necessarily be determined by the existence of a search warrant. In addition, the fact that an attorney

---

[9] (Dkt. No. 8 at 5-7). The legal standard for personal involvement is more completely set out at Dkt. No. 8 at 5-6.

[10] However, the existence of a warrant would not necessarily defeat a claim of lack of probable cause for the search if there was no probable cause for the issuance of the warrant. Because plaintiff appears to make the claim that there was no warrant, he does not challenge its validity.

became involved in the case as late as January 17, may indicate that plaintiff was not simply released with no further consequences, and that contrary to his allegation, he was "charged" with a crime.[11]

If plaintiff had actually named individual defendants who could be served with process, the court might recommend allowing the case to go forward past the initial review stage. However, the court would only allow this because the complaint is unclear as to the actual facts and circumstances surrounding the plaintiff's allegations. The court makes no finding regarding the actual merits of plaintiff's allegations. Because plaintiff has failed to cure the defects which were the basis of Judge Suddaby's dismissal, the court must recommend dismissal with prejudice as ordered by Judge Suddaby. However, this recommendation is subject to Judge Suddaby's review of any objections to this report, filed by the plaintiff. If plaintiff can identify any individual person[12] who plaintiff alleges was personally responsible for the alleged constitutional violations, Judge Suddaby may consider giving plaintiff one more opportunity to name this individual officer or these individual officers.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's SAC2 be dismissed **WITH PREJUDICE** as to the newly-named defendants New York State Police, Utica Police Department, and Oneida County Sheriffs Department, because plaintiff may not sue these entities under

---

[11] Plaintiff states that he was detained "although there were no crimes against him . . . ." SAC2 at 3). However, in the next sentence, plaintiff states that a Utica Police detective told him that the ADA would make his "present charge disappear" if plaintiff would help with the murder investigation. (*Id.*) If there were no "charges," it is unclear how the ADA would make a charge "disappear."

[12] As stated above, plaintiff has stated no basis for municipal liability.

any circumstances, and it is

**RECOMMENDED**, that the dismissal of plaintiff's Fourth Amendment and Due Process Claims be **WITH PREJUDICE**, subject to Judge Suddaby's review of any objections filed by plaintiff, in which he attempts to identify the individual officers who participated in the alleged violation of his Fourth Amendment right to unreasonable search and seizure and false arrest/imprisonment on October 20, 2016, and who allegedly violated his Due Process right on October 20, 2016 by delaying his access to medical care,[13] and it is further

**ORDERED**, that the Clerk serve a copy of this Order upon plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 14, 2019

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[13] As stated above, this claim only refers to the officers' alleged conduct in delaying medical care to plaintiff and not to any actions by St. Elizabeth's hospital or its staff, against which/whom plaintiff's claims have been dismissed based on lack of state action.